# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

THERESA BRELAND, an             :
individual and STEVEN L.        :
BRELAND, an individual          :
                                :
    Plaintiffs,                :        CIVIL ACTION NO.
                                :        1:09-CV-0523-RWS
v.                              :
                                :
MCDONALD'S CORPORATION,         :
a Delaware Corporation,         :
                                :
    Defendant.                 :

## ORDER

This case is before the Court for consideration of Defendant McDonald's

Corporation's Motion for Summary Judgment on Plaintiffs' Remaining Claim

[70] and McDonald's Corporation and McDonald's USA, LLC's Motion for

Summary Judgment on their Counterclaims Against Theresa and Steven

Breland  [72].

## Background[1]

---

[1] The following discussing is taken wholly from the Statement of Undisputed
Material Facts in Support of McDonald's Motions for Summary Judgment ("SOF")
[70-4].  As a preliminary matter, Plaintiffs are required in their response to directly
refute, state a valid objection to the admissibility of, or point out the insufficient
support for or immateriality of each of fact included in Defendant McDonald's
statement of facts. LR 56.1(B)(2)(a)(2), NDGa.  Plaintiffs have failed to submit the

On January 1, 1999, Theresa and Steven Breland ("Plaintiffs") entered into a franchise agreement with McDonald's USA, LLC and McDonald's Corporation (collectively, "McDonald's") that granted Plaintiffs a license to operate the restaurant and to use the McDonald's system, trademarks, and trade names. (SOF ¶ 12.)  In 2004, McDonald's offered Plaintiffs the opportunity to participate in a program to reimage their restaurant. (SOF ¶ 33.) In exchange for McDonald's financial assistance in the reimaging process, Plaintiffs executed a release (the "Limited Release") in which they released McDonald's from all claims arising out of the reimaging program and promised not to sue McDonald's for any released claim. (SOF ¶ 35.)

In October 2008, Plaintiffs committed several material breaches of the franchise agreement, resulting in McDonald's sending a notice of financial default on October 17, 2008 .  (SOF ¶¶ 50-51.)  The notice stated that Plaintiffs were in material breach of the franchise agreement and operator's lease because

---

paragraph-by-paragraph response required by Local Rule 56.1.  The Court has reviewed movant's citations to the record in order to ensure that there is, indeed, no genuine issue of material fact.  See Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008).  Therefore, the SOF is deemed admitted in full.  See Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1302 (11th Cir. 2009) ("Where the party responding to a summary judgment motion does not directly refute a material fact set forth in the movant's Statement of Material Facts with specific citations to evidence, or otherwise fails to state a valid objection to the material fact pursuant to Local Rule 56.1(B)(2), such fact is deemed admitted by the respondent.").

2

they (1) were more than thirty days delinquent in paying $32,357.49 in percentage rent and service fees due to McDonald's, (2) had failed to pay $56,798.65 to their local advertising co-operative, the Greater Atlanta McDonald's Operators Association ("GAMOA"), and (3) had failed to pay $15,143.78 to the McDonald's Operators National Advertising Fund ("OPNAD"). (SOF ¶¶ 28, 52-53.) The notice provided Plaintiffs an opportunity to cure their defaults, but Plaintiffs failed to do so within the time period specified. (SOF ¶¶ 55, 57, 59, 61.)

Despite Plaintiffs' failure to cure, their failure to pay additional rent and service fees due in November, and McDonald's receipt of new information that Plaintiffs owed $116,304.54 in back sales taxes to the Georgia Department of Revenue, McDonald's did not terminate the franchise agreement. (SOF ¶¶ 64, 73.) Instead, on November 24, 2008, McDonald's offered Plaintiffs a forbearance agreement, which Plaintiffs accepted on November 30, 2008. (SOF ¶ 74.)

Under the forbearance agreement, McDonald's agreed to forbear from immediately terminating the franchise agreement so that Plaintiffs could sell their franchise to another operator. (SOF ¶ 75.) The forbearance agreement required Plaintiffs to present McDonald's with a purchase and sale agreement

3

by January 30, 2009 in order to avoid termination and stated that, if Plaintiffs

chose instead to sell their restaurant to McDonald's, McDonald's would buy it

"as an accommodation" for $1,050,000. (SOF ¶¶ 77-78.)

> In exchange for McDonald's forbearance, Plaintiffs:
>
> (1) acknowledged their material breach of the franchise agreement as well as McDonald's right to immediately terminate the franchise agreement and recover possession of the restaurant;
>
> (2) agreed not to contest any amounts owed to McDonald's, GAMOA, OPNAD, or the State of Georgia;
>
> (3) agreed to pay all amounts then due to McDonald's, suppliers, creditors, and taxing authorities, and all future amounts as they came due;
>
> (4) agreed to comply with the franchise agreement;
>
> (5) agreed to face immediate termination of the franchise agreement if they failed to submit to McDonald's a fully executed purchase and sale agreement by January 30, 2009, and to allow McDonald's to take possession of the restaurant if such termination occurred; and
>
> (6) agreed to face immediate termination of the franchise agreement if they violated any terms of the forbearance agreement.

(SOF ¶¶ 76-78.)

4

During the ensuing weeks, Plaintiffs violated the forbearance agreement (and the franchise agreement) by failing to stay current with their financial obligations, including their real estate taxes, percentage rent, and dues to GAMOA and OPNAD. (SOF ¶¶ 80-89.)  Moreover, Plaintiffs failed to reach a purchase and sale agreement with any third-party operator.  (SOF ¶¶ 91-92, 127.)

On January 29, 2009, Plaintiffs accepted McDonald's offer of $1,150,000 to purchase the restaurant.  (SOF ¶¶ 127-29.)  The parties signed a purchase and sale agreement, which became effective on February 3, 2009.  (SOF ¶ 129-31.)

On February 26, 2009, Plaintiffs sued McDonald's.  (SOF ¶ 134.)  In their complaint, Plaintiffs asserted four claims, each based primarily on allegations relating to the reimaging program.  (Compl. ¶¶ 52, 58, 60, 66, 76.)  On February 28, 2009, Plaintiffs' counsel advised McDonald's that Plaintiffs would not close on the sale, and were instead proceeding with their litigation. (SOF ¶ 135.)

After learning that Plaintiffs refused to close on the sale in breach of the purchase and sale agreement, and based on their material breaches of the franchise agreement and forbearance agreement, McDonald's delivered a notice of termination to Plaintiffs on February 28, 2009.  (SOF ¶¶ 136-37.) The notice

5

terminated the franchise agreement and demanded that Plaintiffs immediately surrender possession of the restaurant.  (SOF ¶ 139.) Despite the notice, Plaintiffs refused to surrender possession of the restaurant to McDonald's and began using McDonald's trademarks without its authorization on March 1, 2009.  (SOF ¶¶ 146-47.)  From March 1, 2009 through March 10, 2009, Plaintiffs opened the restaurant off and on with limited hours of operation, and the restaurant generated approximately $30,000 in sales.  (SOF ¶¶ 144-59, 162.) Plaintiffs also eventually ran out of core menu products during this period because they had failed to pay their food supplier.  (SOF ¶¶ 148-49.)

On March 2, 2009, McDonald's filed six counterclaims against Plaintiffs: (1) trademark infringement under section 1114(1) of the Lanham Act (Count I); (2) unfair competition under section 1125(a) of the Lanham Act (Count II); (3) unfair competition under O.C.G.A. section 23-2-55 (Count III); (4) breach of the franchise agreement, operator's lease, and forbearance agreement (Count IV); (5) breach of the Limited Release agreement (Count V); and (6) forcible entry and detainer (Count VI.).

When McDonald's learned that Plaintiffs were keeping the restaurant open and failing to serve core menu products, all while using McDonald's trademarks without its authorization, McDonald's successfully sought a

preliminary injunction from this Court directing Plaintiffs to immediately surrender possession of the restaurant and to cease Plaintiffs' trademark infringement and unfair competition, and enjoining Plaintiffs from breaching their post-termination obligations under the franchise agreement and operator's lease.  (See Order of April 28, 2009 [23].)

On September 14, 2009, McDonald's moved for judgment on the pleadings, asking the Court to dismiss Plaintiffs' complaint. On December 31, 2009, this Court granted McDonald's Motion for Judgment on the Pleadings and dismissed all but one of Plaintiffs' claims.  (Order on Motion for Judgment on the Pleadings [38], December 31, 2009.)

McDonald's has now moved for summary judgment on Plaintiffs' single remaining claim for breach of the implied covenant of good faith and fair dealing in the franchise agreement.  McDonald's also seeks summary judgment on all counterclaims against Plaintiffs, as well as the conversion of this Court's preliminary injunction to a permanent injunction.

**Discussion**

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and

7

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotations omitted)).  Where the moving party makes such a showing, the burden shifts to the non-movant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002).  But, the court is bound only to draw those inferences which are reasonable.  "Where the record taken as a whole could not lead a rational trier

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.

Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted."  Anderson,

477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at

586 (once the moving party has met its burden under Rule 56(c), the

nonmoving party "must do more than simply show there is some metaphysical

doubt as to the material facts").

## I.      Plaintiffs' Breach of Contract Claim

In their single remaining contract claim, Plaintiffs allege that

McDonald's violated the implied duty of good faith and fair dealing by

unreasonably exercising its discretionary authority to prevent the execution of a

condition precedent to Plaintiffs' sale of the restaurant, that condition being

McDonald's approval of a third-party purchaser under the terms of the

forbearance agreement.

As the franchise agreement includes a choice of law provision which is

neither arbitrary nor contrary to Georgia public policy, the Court examines this

claim under Illinois state law.  See Rayle Tech, Inc. v. DEKALB Swine

9

Breeders, Inc., 133 F.3d 1405, 1409 (11th Cir. 1998) ("Although Georgia courts adhere to the rule of lex loci contractus, parties by contract may stipulate that the laws of another jurisdiction will govern the transaction, unless the law is contrary to Georgia public policy or the chosen jurisdiction has no substantial relationship to the parties or the transaction.").  In order to state a breach of contract claim under Illinois law, "a plaintiff must plead and prove the existence of a contract, the performance of its conditions by the plaintiff, a breach by the defendant, and damages as a result of the breach." Kopley Group V., L.P. v. Sheridan Edgewater Props., Ltd., 376 Ill. App. 3d 1006, 1014, 876 N.E.2d 218, 226 (2007) (citation and internal quotation omitted).

In certain circumstances, a breach of the contract can result from the defendant's breach of the covenant of good faith and fair dealing.  While the breach of this covenant does not provide an independent cause of action, a plaintiff can establish a contract claim by alleging that the contract vests the defendant with discretion to perform some obligation and that the defendant's exercise of that discretion was undertaken "in bad faith, unreasonably, or in a manner inconsistent with the reasonable expectations of the parties."  See LaSalle Bank Nat'l Assoc. v. Paramont Props., 588 F. Supp. 2d 840, 853, 857 (N.D. Ill. 2008) (citations omitted).  Such a bad faith exercise of discretion

includes cases where a defendant controls a condition precedent and does not act to bring about its realization.  See Anderson v. Burton Assocs., Ltd., 218 Ill. App. 3d 261, 267, 578 N.E.2d 199, 203 (1991).

Plaintiffs have alleged that McDonald's breached the covenant of good faith by misleading Plaintiffs to believe that they could sell the restaurant to a third party when McDonald's had no intention of authorizing the sale.  (Compl. ¶ 76.)  This claim alleges abuse of McDonald's discretionary authority to execute the precondition of authorizing the sale of the restaurant to a third party.  However, Plaintiffs have failed to proffer any evidence in support of this claim.  Instead, Plaintiffs merely assert, without citation to record evidence, that prospective buyers contacted McDonald's and thereafter failed to contact Plaintiffs again.  (Plaintiffs' Response to the Motion for Summary Judgment ("Pl. Resp.") at 1.)  Plaintiffs also assert (again without citation to record evidence) that one prospective purchaser initially agreed to pay $1,500,000 for the restaurant, only to back out of the agreement and offer an unacceptably lower purchase price.  (Id. at 1-2.)  Even if Plaintiffs had pointed to evidence supporting these contentions, the Court would be unable to find that such evidence was sufficient to demonstrate McDonald's breach of the covenant of good faith.

11

Moreover, McDonald's has cited to extensive, unrebutted evidence negating any contention that it failed to act in good faith with respect to Plaintiffs.  Plaintiffs never even reached a purchase and sale agreement with any potential buyer for their restaurant, and therefore no agreement was ever presented for McDonald's consent.  The operators alleged by Plaintiffs to have been prospective buyers have stated that, for their own independent business reasons, they were either uninterested in purchasing the restaurant or were unable to reach an agreement with Plaintiffs.  One decided not to purchase the restaurant because he thought Plaintiffs' price was "too steep" and he did not have the funds to purchase it.  (SOF ¶ 104.)  Another decided not to purchase the restaurant because she was unable to obtain necessary financial data from Plaintiffs.  (SOF ¶ 111.)  A third offered Plaintiffs $1,050,000, who rejected this offer and asked for $2,000,000.  (SOF ¶ 120.)  Yet another had already purchased a McDonald's restaurant, and was uninterested in buying another at that time.  (SOF ¶ 124.)

Further, the operators alleged by Plaintiffs to have been prospective buyers all stated that McDonald's did not do or say anything to discourage them from purchasing the restaurant.  (SOF ¶¶ 105, 110, 121, 126.)  On the contrary, the McDonald's regional officer responsible for franchisee issues actively

12

encouraged prospective buyers to contact Plaintiffs about the sale of their restaurant.  (SOF ¶¶ 103, 115.)  McDonald's even encouraged Plaintiffs' rejected buyer to rekindle negotiations, although such efforts ultimately proved unsuccessful.  (SOF ¶¶ 101, 103.)

This evidence wholly rebuts Plaintiffs' unsupported assertions that McDonald's misled them about its willingness to approve a sale or actively undermined potential sales to third-party purchasers.  Therefore, Defendant is entitled to summary judgment on Plaintiffs' remaining claim.

## II.     McDonald's Counterclaims

In addition, McDonald's has shown that there is no issue of fact remaining with respect to each counterclaim.  The Court analyzes the merit of these claims below.

### A.     Trademark infringement

McDonald's asserts that Plaintiffs' continued, unauthorized operation of the restaurant after the termination of the franchise agreement constitutes trademark infringement.  The holder of a registered trademark has a civil action against anyone employing an imitation of it in commerce when "such use is likely to cause confusion, or to cause mistake, or to deceive." Lanham Act §

13

43(a),  15 U.S.C. § 1114(1)(a) (2006).  To prevail on a trademark infringement claim, "a plaintiff must show that its mark was used in commerce by the defendant without the registrant's consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake." See <u>McDonald's Corp. v. Robertson</u>, 147 F.3d 1301, 1307 (11th Cir. 1998).

Plaintiffs do not dispute McDonald's ownership of its registered trademarks.  (SOF ¶ 6-7.)  Moreover, given Plaintiffs' operation of the restaurant, it is beyond dispute that Plaintiffs' use of McDonald's trademarks was in commerce. See <u>Radisson Hotels Int'l, Inc. v. Amelia Invest., Inc.</u>, 777 F. Supp. 932, 933-34 (M.D. Fla. 1991) (holding that franchisor had sufficiently alleged "commerce" element of Lanham Act by alleging that holdover franchisee benefitted from national advertising campaign).  Nor is there any dispute that Plaintiffs' use of McDonald's trademarks was unauthorized.  McDonald's hand-delivered a proper termination notice to Plaintiff Steven Breland on February 28, 2009, based on Plaintiffs' repudiation of the purchase and sale agreement and their material breaches of the franchise agreement and forbearance agreement.  See <u>Robertson</u>, 147 F.3d at 1308.  ("[T]he Lanham Act's requirement that a franchisor demonstrate that unauthorized trademark use occurred . . . necessitates some type of showing that the franchisor properly

14

terminated the contract purporting to authorize the trademarks' use, thus

resulting in the unauthorized use of trademarks by the former franchisee.").

Plaintiffs' unauthorized use of McDonald's trademarks was also likely to

confuse, deceive, or result in mistakes by the consuming public.  During the

holdover period, Plaintiffs held themselves out as McDonald's operators, and

customers could not have known that McDonald's no longer licensed or

authorized their operation of the restaurant.  See Burger King Corp. v. Majeed,

805 F. Supp. 994, 1003 (S.D. Fla. 1992) (noting that defendants' unauthorized

use of Burger King's trademarks after "can have no result other than to cause

actual confusion," given that consumers would have no way of knowing that

defendants' restaurants were re no longer affiliated with Burger King).

Moreover, Plaintiffs' inability to operate the restaurant during normal operating

hours and to serve core menu products put McDonald's trademarks and trade

name at risk by failing to uphold McDonald's service standards.  See

Robertson, 147 F.3d at 1309 (noting that "McDonald's has a clear interest in

securing a uniform product and service of high quality at all of its locations").

Therefore, the Court grants summary judgment on McDonald's

trademark infringement claim (Count I).

15

B.      Unfair competition

McDonald's asserts an unfair competition claim under federal law.

Under the Lanham Act, a party has an actionable claim against "[a]ny person

who, on or in connection with any goods or services, . . . uses in commerce any

word, term, name, symbol, or device, or any combination thereof" which is

likely to result in confusion as to "as to the origin, sponsorship, or approval of

his or her goods, services, or commercial activities by another person."  15

U.S.C. § 1125(a)(1)(A).  A plaintiff will prevail on a false designation of origin

claim under section 1125(a) by establishing that the defendant adopted a mark

confusingly similar to the plaintiff's mark such that there exists a likelihood of

confusion as to the origin of the goods.  Ross Bicycles, Inc. v. Cycles USA,

Inc., 765 F.2d 1502, 1503 (11th Cir. 1985).  Evidence demonstrating a

likelihood of confusion from trademark infringement will suffice to show

consumer confusion under this section.  See id. at 1503-04.  ("The factors

relevant to establishing [a likelihood of confusion under section 1125(a)] are

identical to the factors relevant to establishing a likelihood of confusion with

respect to trademark infringement under 15 U.S.C. § 1114.").

McDonald's also asserts a state law claim for unfair competition

predicated on the fraudulent use of its trademarks.  Under Georgia law,

16

equitable relief is available against any persons who "attempt to encroach upon the business of a trader or other person by the use of similar trademarks, names, or devices, with the intention of deceiving and misleading the public . . . ." O.C.G.A. § 23-2-55.  The Eleventh Circuit has held that a trademark infringement claim under Georgia law is reviewed under the same standards as a claim under the Lanham Act.  Optimum Techs., Inc. v. Home Depot U.S.A., Inc., 217 F. App'x 899, 902 n.4 (11th Cir. 2007).  The Eleventh Circuit has also upheld decisions of this Court ruling that the Georgia unfair competition statute involves the same dispositive question as the federal Lanham Act, i.e., whether use of a service mark is likely to cause confusion.  See Jellibeans, Inc. v. Skating Clubs of Ga., Inc., 716 F.2d 833, 839 (11th Cir. 1983); Univ. of Ga. Athletic Ass'n v. Laite, 756 F.2d 1535, 1539 n.11 (11th Cir. 1985) (noting that the standards governing deceptive practices and unfair competition claims under Georgia law "are similar, if not identical, to those under the Lanham Act").

As discussed above, Plaintiffs' use of McDonald's trademarks during the holdover period created a likelihood of confusion as to the origin, sponsorship, or approval of Plaintiffs' services.  Therefore, McDonald's evidence of Plaintiffs' trademark infringement is sufficient to establish a claim of unfair

competition under both the Lanham Act and state law.  Therefore, the Court

grants summary judgment on Counts II and III.

      C.     <u>Breach of the Franchise Agreement, Operator's Lease, Forbearance</u>

              <u>Agreement, and Limited Release agreement</u>

Given Plaintiffs' failure to respond to McDonald's statement of facts, all

such facts contained therein have been deemed admitted.  Therefore, the

undisputed evidence shows that:

(1) Plaintiffs breached the franchise agreement by bouncing payroll

checks and failing to pay $97,690.17 owed to McDonald's;

(2) Plaintiffs breached the operator's lease by failing to pay rent and real

estate taxes;

(3) Plaintiffs breached the forbearance agreement by contesting the

amounts owed to McDonald's under the franchise agreement and by failing to

deliver possession of the restaurant to McDonald's; and

(4) Plaintiffs breached the Limited Release by suing McDonald's on

claims arising out of the reimaging program, which had been released under the

terms of the Limited Release.

As such, the Court grants summary judgment on Counts IV through VI.

## III.    Relief Sought

### A.    Permanent Injunction

Under the principles of equity, a plaintiff requesting a permanent injunction must satisfy a four-factor test:

(1) that [the plaintiff] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006).  Thus, the standard for a permanent injunction is essentially the same as for a preliminary injunction, except that the movant must show actual success on the merits instead of a likelihood of success on the merits. Siegel v. Lepore, 234 F.3d 1163, 1213 (11th Cir. 2000).  McDonald's has already succeeded in gaining a preliminary injunction.  (See Order of April 28, 2009 [23].)  As discussed above, McDonald's has also shown actual success on the merits of its assorted counterclaims.

AO 72A
(Rev.8/82)

Accordingly, Plaintiffs, and their respective officers, agents, employees, successors and assigns, and any other person or entity in active concert or participation with them are hereby PERMANENTLY ENJOINED from:

(1) infringing McDonald's federally registered trademarks and service marks;

(2) unfairly competing with McDonald's in violation of the Lanham Act and O.C.G.A. section 23-2-55; and

(3) breaching their post-termination obligations under the franchise agreement and operator's lease.

B.      Damages

With respect to Count I, McDonald's seeks the recovery of monetary damages based on Plaintiffs' profits obtained during the infringing period of March 1, 2009 to March 10, 2009.  An appropriate measure of damages for both trademark infringement and trade dress infringement under the Lanham Act is an award of the infringer's profits.  15 U.S.C. § 1117(a); see also Burger King Corp. v. Mason, 710 F.2d 1480, 1494 (11th Cir. 1983).  The party seeking damages need only show the infringer's sales, while the infringer must prove all elements of cost or deduction claimed.  15 U.S.C. § 1117(a); see also Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc., 833 F.2d 1484, 1488

(11th Cir. 1987) ("It is enough that the plaintiff proves the infringer's sales. The burden then shifts to the defendant, which must prove its expenses and other deductions from gross sales.").

In the present case, it is uncontested that Plaintiffs obtained $30,652.40 in gross revenues during the infringement period.  (SOF ¶ 162.)  Plaintiffs have failed to present evidence of any costs or deductions from their revenues. Accordingly, the Court finds that McDonald's is entitled to recover the gross sales from the restaurant during the infringement period.

With respect to Count IV, McDonald's seeks to recover damages resulting from the breach of the franchise agreement and operator's lease, as well as the attorney's fees associated with recovering these amounts.

Damages for breach of contract should put the plaintiff in the position it would have occupied absent the breach.  MED+PLUS Neck & Back Pain Ctr. v. Noffsinger, 311 Ill. App. 3d 853, 857, 726 N.E.2d 687, 691 (2000).  In addition, under Illinois law, a court may award attorney's fees in a breach of contract action where sufficiently specific language in the contract provides for such an award.  See Fontana v. TLD Builders, Inc., 362 Ill. App. 3d 491, 510, 840 N.E.2d 767, 783-84 (2005); cf. In re Weinschneider, Civil Action Nos. 03-C-5274, 89-B-17026, 2004 WL 524872, at *3 (N.D. Ill. Mar. 10, 2004)

(holding that a party cannot recover attorneys fees based on another party's breach of a covenant not to sue unless the covenant specifies that attorneys fees are recoverable).

It is undisputed that Plaintiffs owe McDonald's $54,145.94 in unpaid rent and service fees, real estate taxes, and interest under the terms of the franchise agreement and the operator's lease.  (SOF ¶ 165.)  Moreover, the franchise agreement also provides that "McDonald's shall be entitled to recover such reasonable attorneys' fees as may be allowed by the court together with court costs and expenses of litigation" if it "institutes any action at law or in equity against Franchisee to secure or protect McDonald's rights under or to enforce the terms of this Franchise."  (SOF ¶ 26.)  As such, the contract specifically allows for the recovery of attorney's fees in this action.

Therefore, on Count IV, the Court finds that McDonald's is entitled to recover damages in the amount of $54,145.94, plus reasonable attorneys' fees, costs, and expenses.  McDonald's shall file a statement of its costs and fees with the Court not later than ten (10) days from the date this Order is entered on the docket. Plaintiffs shall then have five (5) days in which to file any response. If a response is filed, McDonald's shall have an additional five (5) days from the date of that filing in which to file a reply.

Finally, the Limited Release provides that McDonald's is entitled to recover its attorneys' fees and costs upon a breach of the Limited Release.  As the agreement in question specifically provides for the recovery of attorney's fees, McDonald's is entitled to such recovery.  Here, the proper measure of damages is the attorneys' fees and costs incurred by McDonald's in defending against the released claims.  See Anchor Motor Freight, Inc. v. Int'l B'hd of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Local Union No. 377, 700 F.2d 1067, 1072 (6th Cir. 1983) (holding that union could recover "costs incurred in defending against an action filed in breach of a covenant not to sue").

It is uncontested that McDonald's has incurred approximately $29,960.85 in attorneys' fees defending against the claims covered by Plaintiffs' covenant not to sue.  (SOF ¶ 163.)  As such, on Count V, the Court finds that McDonald's is entitled to recover damages in the amount of amount of $29,960.85.

23

## Conclusion

For the aforementioned reasons, Defendant's Motion for Summary Judgment on Plaintiffs' Remaining Claim [70] is **GRANTED**.  McDonald's Motion for Summary Judgment on Counterclaims Against Plaintiffs [72] is also **GRANTED**.  McDonald's is entitled to attorney's fees for Count IV and shall submit a statement of costs and fees as provided above.

**SO ORDERED**, this   10th   day of November, 2010.


**RICHARD W. STORY**
United States District Judge

24